# MARY R. BERRY *vs.* HENRY C. MATTHEWS AND EDWARD CHAPMAN.

An attachment against non-resident defendants, was levied on certain land described in a deed offered in evidence by the plaintiff, from William B. McAtee and Ann A. McAtee, his wife, to the defendants, as a tract of land lying in Washington county, Maryland, being part of a tract called "Conococheague Manor, and part of a tract called 'Number Five,' lying contiguous to each other, and containing 168¾ acres, "more or less, being part of the land which was conveyed to the said William B. McAtee by Thomas Martin, Sheriff of Washington county, in confirmation of sale made to him the 11th day of November, in the year 1847, and also conveyed to said William B. McAtee, by Meliora O. Dall, by deed dated the 11th day of October, in the year 1851." It was admitted, that this land belonged to the defendants, and lies about eight or nine miles from Hagerstown, in Washington county. The claimants of the land, offered in evidence a deed of trust from the defendants to them, subsequent in date to that offered in evidence by the plaintiff, conveying "all that farm or tract or parcel of land, lying and being in Washington county, in the State of Maryland, near Hagerstown, late the estate of —— Dall, containing" 171 acres, "more or less, and which was conveyed to the said" defendants "by the *trustees or representatives* of the said Dall, as by deed recorded in said county of Washington, may appear, which is hereby referred to for a full description of said tract of land, and by which description the same is intended to be hereby conveyed." HELD:

1st. That this deed of trust does not present any ambiguity either *latent* or *patent;* it gives the devolution of the title and describes the property with clearness, and neither the one nor the other corresponds with the land attached.

2nd. Certain documentary and other evidence adduced by the claimants in this case, to show the identity of the land conveyed by the deed of trust with that attached, in no sufficient way connects itself with the description in the deed, to overrule and set it aside.

Where an attachment is laid in the hands of several garnishees separately, each must appear severally, though they all employ the same attorney, and as many suits be docketed as there are separate appearances.

Each suit, so docketed, is a separate cause, and goes on without reference to the others, except so far as necessary, to secure the defendant against the plaintiff's getting more than one satisfaction for his debt.

If testimony be offered *generally* and it be objected to in its *entirety,* and any part of it be admissible, it is error to reject the *whole.*

An *office copy* of a deed not required by law to be recorded, is not admissible in evidence; and if in case of an assignment of personal property, symbolical delivery be sufficient, still the execution of the assignment must be proved by testimony other than an office copy.

A conveyance of personal property, acknowledged out of the State, in the District of Columbia, before two justices of the peace in and for Washington county, in said district, is not acknowledged as required by the act of 1856, ch. 154.

A deed of trust reciting, that the grantors are owners of sundry real and personal estates and effects, merchandize, notes, stocks, credits, claims and demands, all of which they are desirous to have made available as speedily as practicable, to the payment of their debts, in the mode hereinafter provided, conveyed the same to trustees *in trust,* with all convenient dispatch to collect and render available all said debts, rights, credits, stocks, claims and demands, and sell all said real and personal estate and effects, "either at public or private sale, and for cash or *on reasonable credits,*" as the trustees, "in the exercise of a sound discretion, shall deem most advisable, and most for the benefit of the creditors and the trust," all public sales to be made upon reasonable previous public notice, with power to the trustees to compromise such of the debts, rights and credits, as they may think proper, and upon such terms as they may think best for the interest aforesaid, and to appoint assistants, agents and attorneys, as in their judgment the same may be necessary, to enable them to fulfil the trusts, and apply the proceeds; 1st, to the expenses of the trust, including the usual commission to the trustees; 2nd, to the payment, in preference, of certain specified debts; and 3rd, to divide the residue among all the creditors of the grantors, *pro rata.* HELD:

That this deed is not fraudulent and void on its face, as against creditors under the *statute of* 13th *Elizabeth, ch.* 5.

APPEAL from the Circuit Court for Washington county.

*Attachment* on warrant, issued at the instance of the appellant, on the 8th of October 1857, against Francis Dodge and Alexander H. Dodge, as non-residents, they being residents and citizens of Georgetown in the District of Columbia, and there trading, under the firm of F. & A. H. Dodge. The plaintiff's claim was for $3801.13, due upon two promissory notes, of F. & A. H. Dodge, to her.

The attachment, returnable to the following November term of the court, as appears by the sheriff's return, was laid on the 9th of October 1857, upon the rights and credits of the defendants, in the hands of William Dodge and George Snyder, and on the 10th of October 1857, on "all the right, title and interest" of the defendants, "in and to all that tract or parcel of land, lying and being in Washington county afore-

said, being part of a tract called 'Conococheague Manor,' and part of a tract called 'Number Five,' lying contiguous to each other, containing together one hundred and sixty-eight and three-fourths acres of land, being part of the land conveyed by Thomas Martin, late sheriff, to William B. McAtee, and by the said William B. McAtee and wife to the said Francis and Alexander H. Dodge, by deed bearing date the 24th of January 1853, and recorded in Liber J. N., No. 7, folio 361, one of the land record books of said county, as by reference a more perfect description can be had," appraised at $5062.50, and also on a crop of corn, growing on said land, and appraised at $225.

The short note and summons, for the defendant, were returned, "Cannot be found and a copy of short note set up at the court house door." The garnishees, William Dodge and George Snyder appeared, and thereupon the appellees, Matthews and Chapman, came into court, and, by way of plea, filed a claim to all the property, real and personal, so attached, as belonging to them, both before and at the time the attachment was issued and laid, and that it was not the property of the defendants, as returned by the sheriff.

The case was then continued till March term 1858, when the plaintiff replied to the claim of the appellees, traversing the same, and, issue being joined thereon, the case was tried before a jury.

*Exception.* The plaintiff offered in evidence the attachment papers, and also a deed from "William B. McAtee and Ann A. McAtee, his wife," of Washington county, Maryland, to "Francis Dodge and Alexander H. Dodge," of Georgetown, in the District of Columbia, dated the 24th of January 1853, and duly acknowledged and recorded among the land records of Washington county, in Maryland. By this deed the grantors, "for and in consideration of the sum of $5062.50," in hand paid to the said William B. McAtee, convey to the grantees and their heirs, "a tract or parcel of land, lying and being in Washington county, Maryland, aforesaid, being part of a tract of land, called 'Conococheague Manor,' and part of a tract of land, called 'Number Five,' lying contiguous to each

other and included by the following metes and bounds, to wit: (Here follow the metes and bounds:) "Containing and now laid out for one hundred and sixty-eight acres and three-fourths of an acre of land, be the same more or less, *being part of the land which was conveyed to the said William B. McAtee, by Thomas Martin, Sheriff of Washington county, in confirmation of sale made to him, the* 11th *day of November, in the year* 1847, *and also conveyed to said William B. McAtee, by Meliora O. Dall, by deed dated the* 11th *day of October, in the year* 1851."

And it was admitted, that the land embraced in the above deed, and so attached, lies about eight or nine miles from Hagerstown, and about three miles from Williamsport, in Washington county, Maryland. This was all the evidence on the part of the plaintiff.

The claimants then, to support the issue on their part, proposed to offer in evidence the following deed of trust or assignment, from Francis and Alexander H. Dodge to them, the due execution and delivery whereof are admitted by the plaintiff, the said deed being recorded on the 8th of October 1857, among the land records of Washington county, Maryland. By this deed, dated the 5th of October 1857, "between Francis Dodge and Alexander H. Dodge, of the first part, and Henry C. Matthews and Edward Chapman, of the second part, all of Georgetown in the District of Columbia," the parties of the first part, in consideration of one dollar, convey to the parties of the second part and their heirs, "*all that farm or tract or parcel of land lying and being in Washington county, in the State of Maryland, near Hagerstown, late the estate of —— Dall, containing one hundred and seventy-one acres, more or less, and which was conveyed to the said parties hereto of the first part, by the trustees or representatives of the said Dall, as by deed, recorded in said county of Washington, may appear, which is hereby referred to for a full description of said tract of land, and by which description the same is intended to be hereby conveyed,*" in *trust,* that the grantees, or the survivor of them, "do and shall, as speedily as possible, sell the same, either at private or public sale, for cash, or on reasonable credit, as they

or he shall think most advisable, and upon such notice of the time and place of sale as they or he shall think best," and apply the proceeds to pay, 1st, all the usual and proper expenses of the trust, 2nd, certain specified debts of the grantors in preference, and 3d, "after fully paying and satisfying all the above debts and sums of money, (and if the proceeds shall be insufficient to pay them in full, all the said parties shall have *pro rata* in the assets,) all the rest and residue of the proceeds from said property shall be divided and distributed unto, between, and amongst, all the other creditors of the said parties hereto, of the first part, equally, share and share alike, according to the amount of their respective debts." This deed was acknowledged by the grantors, before a Notary Public, residing at Georgetown in the District of Columbia.

The claimants also offered to read in evidence to the jury a *duly authenticated copy* of a certain other deed of trust, or assignment, from the said F. & A. H. Dodge to the said Matthews and Chapman, bearing date the 5th day of October 1857, and recorded in and among the records of conveyances for the county of Washington, in the District of Columbia, on the 10th day of October 1857; the *due execution* of which said deed is admitted by the plaintiff, and which said *authenticated copy*, so offered, is as follows:

"This indenture made the 5th day of October, in the year 1857, between Francis Dodge and Alexander H. Dodge, of the first part, the said Francis Dodge, of the second part, the said Alexander H. Dodge, of the third part, Henry C. Matthews and Edward Chapman, of the fourth part, all of the District of Columbia, and George W. Riggs, and all other creditors of the said F. & A. H. Dodge, of the fifth part. Whereas, the said parties hereto of the first part are indebted to sundry persons for divers sums of money loaned to, and deposited with, them, and also in other debts contracted in their business; and they are joint owners of sundry real and personal estates and effects, merchandise, notes, stocks, credits, claims and demands; and the said Francis Dodge is the owner, individually, of divers real and personal estate and effects, and the said Alexander H. Dodge is also the owner, individually, of

Berry *vs.* Matthews & Chapman.

divers other real and personal estate and effects; the whole of which assetts and property they are desirous of having made available as early as practicable, and applied to the satisfaction of their debts and liabilities, in the manner hereinafter provided for, which, upon mature and anxious consideration, they have deemed most just and equitable.''

And the deed then, in consideration of one dollar, conveys to Matthews and Chapman, 1st, all the real estate, situated in the district of Columbia, belonging to Francis Dodge, individually, consisting of houses, lots, warehouses and wharfs, and all his household furniture, plate, linen, china, glass, goods, chattels and effects of every kind and description, horses and carriages, in and about his dwelling house and premises aforesaid, and all debts, stocks, claims and demands, and personal property whatsoever owned by him, individually, whereever the same may be, (except such as are now held by the said Chapman, as trustee, as part of the maiden property of the present wife of the said Francis Dodge; 2nd, all the estate, real and personal, (similarly described,) owned by Alexander H. Dodge; 3rd, all those lots and wharves in Georgetown, with the warehouses thereon, on the south side of Water street, owned by said Francis Dodge and Alexander H. Dodge, as at present used and occupied by them as their place of business, and all other real estate whatsoever, in the District of Columbia, owned and held by them; also a farm of one hundred and seventy-one acres of land, in Washington county, Maryland, and a house and lot in Alexandria, Virginia; also all the furniture, utensils, fixtures and effects, in and about their said warehouses and premises, all their stock in trade, consisting of sugars, flour, and other goods, merchandise and effects whatsoever, in and about their said warehouses and premises, or wherever else the same may be, in the United States or abroad; also, every the debts, sum of money and sums of money, bills, bonds, notes, securities, stocks, rights, credits, claims and demands whatsoever, belonging to them, whereever the same may be due from any person or persons, or institution or company whatsoever, (except the stock of the Farmers & Mechanics Bank of Georgetown, pledged by them

Berry *vs.* Matthews & Chapman.

to Riggs & Co., and loaned to them by the trustees of the late Francis Dodge, as hereinafter mentioned;) also all their shares, right and interest, of, in and to the following vessels owned by them in part, and enrolled, registered and licensed in the custom house, in Georgetown, aforesaid, viz: the bark William Chase, brig Fidelia, schooners Fairfax and Hamilton, all now absent from the said port of Georgetown, schooners Arctic and Statesman, both now in said port, (the certificates of registry and enrollments of all of which vessels, according to the act of Congress, are inserted in the deed,) with all the apparel, tackle, furniture and appurtenances belonging to said vessels, and every of them.

The deed then declares, that the several and respective grants and assignments herein contained and made, are so made to the said Matthews and Chapman *upon trust,* that they, or the survivor of them, "do and shall, with all convenient dispatch, collect and render available all the said debts, rights, credits, stocks, claims and demands, and also sell and dispose of, all and singular, the real and personal estates and effects above mentioned, and hereby conveyed and assigned as aforesaid, either at private or public sale, and for cash, or on reasonable credits, as they or he, in the exercise of a sound discretion, shall deem most advisable and most for the benefit of the creditors and the trust; all public sales to be made upon reasonable previous public notice of the time and place of sale; and with power to adjust and settle, in their or his discretion, by compromise, such of the debts, rights and credits as he may think proper, and upon such terms as they or he may think best for the interest aforesaid; and upon any sales of the said estates and payment of the purchase money, to convey and assign the same to the purchaser or purchasers absolutely, who shall be under no obligation to see to the due application of the purchase moneys, nor answerable for any misapplication thereof; and the said trustees or trustee shall have power to appoint assistants, agents and attorneys, so far, as in their or his judgment, the same may be necessary to enable them or him to fulfil the trusts hereby devolved upon them or him; and upon further trust that the moneys which shall arise from

the property and effects hereby conveyed and assigned, when and as realized, shall be applied and disposed of,'' 1st, to pay all taxes, insurances and expenses attending the sale and disposition of the property and the collection of the debts, claims and demands, including therein the compensation to assistants, agents and attorneys employed in the trusts, the costs and expenses of this deed, and of legal advice and services to the trustees, in the execution of the trust, and the reasonable and usual commission allowed by the court of this district to trustees, in the execution of similar trusts. 2nd. To the payment, in preference, of certain specified debts due by the parties of the first part, and 3rd, "after fully paying and satisfying all the above debts and sums of money, (and if the proceeds should be insufficient to pay them in full, all the said parties shall share *pro rata* in the said assets,) all the rest and residue of the proceeds, from the said property hereby assigned and conveyed, shall be divided and distributed unto, between and amongst all the other creditors of the said parties hereto of the first part, the said Francis and Alexander H. Dodge, equally, share and share alike, according to the amount of their respective debts.'' The deed also contains a covenant, on the part of the grantors, to warrant the premises against all persons whomsoever, and to do any further act the better to convey and assign the same as aforesaid, and also an appointment of the trustees, as their attorneys, irrevocable, to collect and get in the said assets, to give receipts in their names, or in their own names, and to do all other necessary and lawful acts in the premises, to effect the objects of the trust hereby created. The trustees declare their acceptance of the trust and covenant, and agree to perform the same duly and faithfully.

The deed was executed by the grantors and the trustees, and attested in the presence of two witnesses, as follows: "Signed, sealed and delivered in the presence of us, and possession of the personal property, assigned by the above deed, delivered to the said Matthews and Chapman, by the delivery of one table by said Francis Dodge, in the name of the whole of his individual personal property; of one chair by said Alex-

ander H. Dodge, in the name of the whole of his personal property; and of one desk by said F. and A. H. Dodge, in the name of the whole of their joint personal property." It was acknowledged by the grantors, before two justices of the peace in and for Washington county, District of Columbia.

The claimants then, for the purpose of showing the application of the description of the land and premises, contained in the deed first offered by them, to the land and premises attached by the plaintiff, and now in question, and to show the correctness of the reference in said deed, and that the land conveyed by the said William B. McAtee and wife, to the said F. and A. H. Dodge, by the deed read in evidence by the plaintiff, being the same upon which the plaintiff's attachment has been laid, was and is the same land conveyed by the said deed from F. and A. H. Dodge to the claimants, first offered in evidence aforesaid by the said claimants, and to show the surrounding facts and circumstances, under which the said deed from McAtee and wife, and that from the Dodges to the claimants, (the first offered in evidence as aforesaid,) were made, and to show the real character in which the said McAtee acted, in selling the said land to the said F. and A. H. Dodge, the said claimants offered to prove to the jury by competent evidence, that a certain John R. Dall, of Washington county, Maryland, was and had become greatly embarrassed with debts in the form of judgments and other liens, and that among the said judgment creditors was James A. Magruder, who held a judgment for a large sum against the said Dall, and that said judgment was duly assigned by the said Magruder to the said F. and A. H. Dodge, and that the same was entered to their use; that execution had been issued against the said Dall, on two junior judgments, and all of his real estate was seized and taken under said executions and sold by the sheriff, and that the said William B. McAtee, became the purchaser thereof for a small sum, and received a deed from the said sheriff, for the whole of said real estate, bearing date the 20th of December 1847, and duly recorded among the land records of Washington county, which is as follows. (The deed thus set out in the record, is from Thomas Martin, sheriff

69     v. 13.

of Washington county, to William B. McAtee, and is dated
the 20th of December 1847. It recites judgments against
John R. Dall and others, recovered by the Hagerstown bank,
and William Towson, ex'cr of Jacob Towson, the executions
thereon, and the levy of such executions upon the real estate
of said Dall, consisting of tracts or parts of tracts of land
called "Conococheague Manor,' and "Number Five," con-
taining in all about sixteen hundred acres of land, the sale
thereof at sheriff's sale, under these executions, on the 11th
of November 1847, to William B. McAtee, for $500, and then
conveys the same to said McAtee;) that for the protection of
the creditors of said Dall, the said McAtee became and was
appointed trustee or agent, by an agreement with the said
creditors, to rent out and sell the said real estate so levied upon
and sold as aforesaid, and to account for and apply the pro-
ceeds of the rents and sales to the liquidation of said judg-
ments and liens, and that the following are the articles of
agreement, entered into by the said McAtee and the said
creditors.

This agreement, which is set out in the record, bears date
the 7th of October 1851, and purports to be made between
James A. Magruder and others, of the one part, and William
B. McAtee, of the other part. It recites, that the parties of
the first part are judgment creditors and mortgagees of John
R. Dall, the levy upon all his lands and real estate by Mar-
tin, as sheriff, of executions on junior judgments, the sale
thereunder of all said real estate, subject to all such prior judg-
ments and liens, amounting to $54,648.40, or thereabouts,
and the dower right of Mrs. Dall, to McAtee, and the sheriff's
deed to him therefor, and that it is extremely doubtful whether
the rents which have accrued and shall accrue on said lands,
since they have been held by said McAtee, and the money
which they may now command in the market, would satisfy
and extinguish such prior liens after providing for Mrs. Dall's
dower, and all costs and expenses; and that for the purpose of
accomplishing such payments, and to reimburse McAtee for
his outlays, and all trouble and expenses, the parties hereto
have come to the following agreement. It then stipulates; 1st,

Berry *vs.* Matthews & Chapman.

that, for disencumbering the land of the dower of Mrs. Dall, McAtee and wife shall convey to her a certain described portion thereof, in full satisfaction of her dower in the whole, she, thereupon, to release to McAtee all claim of dower in the residue, and the parties of the first part, and all others holding said prior liens, to release to her all claim by virtue of such liens, upon the portion so to be conveyed to her by McAtee in satisfaction of her dower, and the said Meliora Dall, to have said land clear of any charge for rent thereon; 2nd, "that the said McAtee shall thereupon proceed, without delay, to lay off and divide all the said residue of said lands, in good, convenient and vendible farms, and shall sell the same at public or private sale, without unnecessary delay, to the best advantage, and upon convenient and reasonable credit payments, receiving enough in hand to secure a performance of the contracts of sale, and reimburse for any loss in case of non-fulfillment; and when the respective sales shall have been fully complied with, by payment in full of said purchase money, he the said McAtee, and his wife Anne A. McAtee, shall convey to the several purchasers, the lands respectively bought by them, free and discharged from all said liens and encumbrances, and with such other covenants as he, the said McAtee, may agree to enter into." (The other stipulations of this agreement need not be particularly stated, as they apply chiefly to the mode in which McAtee was to distribute the proceeds of sale of the lands, and the rents thereof, until such sales were made amongst the incumbrancers on the property, and in compensation for his own expenses and trouble.)

The due execution by all the parties to this agreement, was admitted by the plaintiff. It was also admitted, that the said James A. Magruder, named in said agreement as judgment creditor, duly assigned his said judgment to the said F. and A. H. Dodge, and that they held the same against the said Dall and his estate. It was admitted by the plaintiff, that said judgment, inclusive of interest and costs, on the 1st of April 1853, amounted to $6527.36, and that in payment or part payment thereof, the said McAtee, in pursuance of the aforesaid agreement, sold to the said F. and A. H. Dodge the

land mentioned in and conveyed by the said deed from the said McAtee and wife, to the said F. and A. H. Dodge, given in evidence by the plaintiff as aforesaid.

And the claimants further offered to prove by the said William B. McAtee, a competent witness, that he acted under the said agreement with the creditors, in disposing of the land to the said F. and A. H. Dodge, and that he sold out all of the real estate purchased at the sheriff's sale as aforesaid, except that assigned in lieu of dower, and applied the rents and profits thereof from the time of his purchase as aforesaid, and the proceeds of sale, to the extinguishment of said judgments and liens, and that for executing and carrying out the said agreement, he received a commission. And the claimants also offered to prove by William Dodge, a competent witness, that the said F. and A. H. Dodge, never owned or claimed to own any other farm or land in Washington county, Maryland, than that acquired from the said McAtee as aforesaid, and conveyed to them by the said deed, given in evidence aforesaid by the plaintiff; and that they had not any other land in the said county of Washington, in Maryland, at the time of executing said deed to the said claimants, first offered in evidence by them as aforesaid, and that they never, at any time, owned any other part of the estate of the said John R. Dall, or any other Dall, than that conveyed by the said McAtee as aforesaid. And the claimants further offered to prove by competent evidence, that there was no other deed to the said Francis and |Alexander H. Dodge on record in Washington county, Maryland, for any land or farm whatever, except that from the said McAtee and wife as aforesaid.

To all which said evidence and testimony so offered by the said claimants, Matthews and Chapman, the plaintiff, by her counsel, objected to its admissibility, on the ground, that it is not competent to show, by the evidence offered, that the land and premises conveyed to the claimants by the deed so offered in evidence by them, are the same which have been attached and levied on in this cause, and that said deed, so offered by them, is void as against the creditors of said F. and A. H. Dodge, and that the other deed of assignment, so offered by

the claimants and recorded in the county of Washington, and District of Columbia, is inadmissible in this cause for any purpose whatever; and that the said deed of assignment is also void as to the creditors of F. and A. H. Dodge; but the court (PERRY, J.,) overruled such objection, and permitted the same to go to the jury. To which said opinion and ruling of the court the plaintiff excepted. The jury, by their verdict, found for the claimants on the issue joined, and judgment was in their favor for costs. From this judgment the plaintiff appealed.

*Note,* By an agreement filed in this case in this court, it was agreed, that cases were docketed by the clerk of the circuit court for Washington county, against the garnishees William Dodge and George Snyder, named in the sheriff's return, at March term 1858, which were continued to November term 1858, when they were marked respectively, *"stet.,"* to await the decision of the Court of Appeals, in the above case; that interrogatories were propounded in writing to the said garnishees, and filed in said cases against them; that the said William Dodge, answered said interrogatories filed in the case against him, admitting an indebtedness to the said F. and A. H. Dodge, at the time of the laying of the attachment in his hands; that the said George Snyder, answered the interrogatories propounded to him in his case, admitting that he had in his possession about three hundred and fifty bushels of corn, being the share of said F. and A. H. Dodge, of a crop of corn raised by him as their tenant on the land attached; that the said clerk also docketed a suit as above, *(Mary R. Berry vs. Matthews & Chapman,)* against the claimants, which stood at 223 trials, March term 1858, in which the jury was sworn, and the trial had, contained in the record in this appeal, and that the said claimants had previously filed their said claim to all the property attached, as well the land as that in the garnishees' hands in the original attachment suit; and that the rights and credits attached in the hands of the said William Dodge, were due and owing by him to said F. and A. H. Dodge, at the time of the execution of their deed of trust to the claimants, on the 5th of October 1857.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Z. S. Clagett* and *D. Weisel* for the appellant, argued:

1st. That the deeds and parol and other proof, offered by the claimants, were inadmissible for the purposes intended, 1st, because the description of the land, in the first deed offered by the claimants, includes several particulars, all of which are necessary to ascertain the property conveyed; the general one yielding to, and being controlled by, the more particular one in this case; and when so taken together it shows a tract of land *different* from the one attached by the plaintiff and conveyed by the deed given in evidence by the plaintiff.  1 *Greenlf. on Ev.*, sec. 268.  4 *Kent*, 466.  4 *Cruise's Dig.*, 327, sec. 64.  3 *Atk.*, 9, *Gascoigne vs. Barker.*  7 *Johns.*, 223, *Jackson vs. Clark.*  5 *East.*, 81, *Roe vs. Vernon.*  8 *East.*, 102, *Doe vs. Greathed.*  7 *Md. Rep.*, 23, *Douglas vs. Blackford.*  3 *Md. Rep.*, 446, *Cole vs. Ensor.*  2nd, because a deed must contain, in itself, a description of the land conveyed, with sufficient certainty to ascertain and locate it, and if it does not, it is not competent to supply the deficiency in the description by parol proof or such proof as was offered and admitted in this case, as the effect of such proof would be to supply a deed different from the one in the particular description.  10 *G. & J.*, 10, *Neel vs. Hughes.*  6 *Gill*, 154, *Wilson vs. Inloes.*  1 *H. & G.*, 435, 439, *Thomas vs. Turvey.*  9 *Gill*, 205, 210, *Taney vs. Bachtell.*  4 *Md. Rep.*, 498, *Marshall vs. Haney.*  6 *Gill*, 66, *Dorsey vs. Wayman.*  1 *Greenlf. on Ev.*, sec. 289.  4 *Cruise's Dig.*, title 32, ch. 19, sec. 55.  4 *Wend.*, 369, 374, *Jackson vs. Parkhurst.*  1 *G. & J.*, 443, *Clark vs. Belmear.*  3rd. Because the said first deed, offered in evidence by the claimants, does contain, upon its face, a full and perfect description of the land thereby conveyed, and there being in it no latent ambiguity, no parol proof can be admitted to explain it, or apply the description in it to another tract of land, or to the land attached in this case.  On this point, in addition to

the authorities already cited, see 8 *Bing.*, 244, *Miller vs. Travers.*

2nd. That the deed so first offered in evidence, by the claimants, is inadmissible, the same being void under the statute of 13*th Elizabeth,* as against the creditors of F. & A. H. Dodge, the grantors, 1st, because it authorises a sale *on credit* of the property thereby conveyed.   4 *Kent,* 706.   *Roberts on Fraud. Con.* 32.   *Burrill on Assignments,* 198, 199, *(note,)* 200, 201, 210 to 214.   9 *Paige,* 398, *Meacham vs. Sternes.* 2 *Selden,* 510, *Nicholson vs. Leavitt.*   2 *Comst.,* 365, *Barney vs. Griffin.*   7 *Md. Rep.,* 389, *American Exchange Bank vs. Inloes.*   10 *Md. Rep.,* 301, *Funk vs. Newcomer.* *Cowp.,* 434, *Cadogan vs. Kennett.*   1 *Iredell,* 499, *Hafner vs. Irwin.*   3 *Md. Rep.,* 36, *Green & Trammell vs. Trieber.* 2nd, because it does not convey all the debtor's property.   In such a deed, to be valid, it should appear affirmatively, on the face of the deed itself, that the grantor had dedicated his entire property to the benefit of his creditors, and this cannot be shown by proof *aliunde.*   7 *G. & J.,* 480, *Houston vs. Nowland.*   3 *Md. Rep.,* 36, 48, *Green & Trammell vs. Trieber. Ibid.,* 40, *Sangston vs. Gaither.*   7 *Md. Rep.,* 393, *American Exchange Bank vs. Inloes.*   8 *Md. Rep.,* 425, *Malcolm vs. Hodges.*

3rd. That the rights and credits of the grantees are not conveyed by the deed which would embrace them, because this deed is also void as against creditors, as it contains an authority for a sale *on credit,* which would void it *in toto,* and is likewise obnoxious to the same objections which are urged against the deed for the land.   For this the same authorities are relied on as are cited under the preceding point.

4th. That the corn attached did not pass by any of these deeds so offered in evidence by the claimants, the one not professing to convey it, and the other not having been acknowledged agreeably to the law of Maryland in such case provided. *Act of* 1856, *ch.* 154, *secs.* 123 to 131.   For this latter reason, also, the assignment is void, in so far as it attempts to convey any rights, credits or personal property whatever of the grantors.

5th. The objection that the exception was taken to the admissibility of *all* the evidence offered, and that if any part of it was admissible, there was no error in rejecting the whole, cannot avail in this case, because the trial, in which this appeal was taken, was solely in reference to the *land,* and in regard to the personalty and credits, separate cases were docketed against the garnishees, which are now awaiting the decision in this court. So far as the land is concerned, which alone is the subject of this suit, none of the proposed testimony was, as we have shown, admissible.

*R. H. Alvey,* for the appellees:

The objection taken by the plaintiff was to the whole of the evidence offered by the claimants, to the two deeds of assignment and all the other evidence offered in connection therewith *en masse.* The court below therefore was right in overruling the objection, in its entirety, if any part of the evidence offered was admissible. 3 *Gill,* 220, *Budd vs. Brooke.* 11 *Md. Rep.,* 408, *Carroll vs. The Granite Manf. Co.* To enable the appellant to succeed on this general objection to the whole evidence, it must be fully established, that both of the deeds of assignment, offered in evidence by the appellees, are absolutely void on their face, and without reference to any extrinsic evidence whatever, for if the deeds are not so void in law an objection could not have been taken to their admissibility in evidence, but by instruction to the jury only. And if the deed for the *land* should be considered inadmissible, for any reason, still, if the assignment of the personalty is valid, the objection cannot be sustained and the judgment must be affirmed. Are then these deeds of assignment, or either of them, void in law?

It is first objected, that the power conferred by them upon the trustees, to sell the property "for cash or on reasonable credit," is an unlawful hindrance and delay of creditors, and therefore rendered the deeds altogether void. This question is of foreign importation and has never troubled our courts until recently. But however it may have been determined else-

where, I maintain, that it is settled in this State by judicial precedent and decision, that this power is valid and constitutes no legal objection to the deeds. 6 *G. & J.*, 363, *Union Bank vs. Ellicott.* 7 *G. & J.*, 480, *Houston vs. Nowland.* 6 *G. & J.*, 205, *State vs. Bank of Maryland.* 4 *Gill*, 131, *McCall vs. Hinkley.* 9 *Gill*, 211, *Beatty vs. Davis.* 7 *Wheat.*, 556, *Marbury vs. Brooks.* It is true, that in these cases it was not made a distinct question, but it was simply because it was not deemed questionable. The deeds were all declared valid,—a thing which could not have been if this power, expressed on their face, condemned them as void. In the cases of *Inloes vs. American Exchange Bank,* 11 *Md. Rep.*, 173, and of *Macunel, et al., vs. Murdock,* decided at the present term of this court, the question was distinctly raised and expressly decided. These cases must be taken as decisive of this point.

It is also objected to these deeds, that they do not affirmatively show and state, on their face, that the property conveyed was all the property owned by the assignors at the time. If these deeds contained stipulations, with creditors, for final releases, then, perhaps, the objection would come with some force, under the decisions of this court. They belong, however, to a different class of assignments. They do not require of the creditors releases, as a condition precedent to a participation in the benefits of the trust. In assignments, stipulating for releases, because the creditor is required to relinquish forever his claim, he is entitled, as a fair consideration therefor, to a surrender of all the debtor's property. The condition of the creditor, under the deeds in question, is altogether different. If his debt is not fully discharged out of the trust fund, he continues to hold it as a subsisting demand against the assignors, to be enforced whenever they may be able to pay. It is the ordinary case of a debtor conveying his property for the benefit of his creditors generally, giving preference to some over others. This is a well established right. The debtor, though he be in insolvent circumstances, may convey his property, either directly to a favored creditor, or to a trustee for his benefit. All that is required is, that it be done in good faith.

70      v. 13.

"There is little force," says this court in *Glenn vs. Grover &*
*McColm*, 3 *Md. Rep.*, 227, "in the objection, that Grover
was insolvent and transferred all his property in payment of
this one claim, provided it was done in good faith. Prefer-
ences are allowed. They always presuppose, that there are
creditors, against whom the assignment is to operate, and it is
generally true, that in such cases the debtors are embarrassed,
if not insolvent, yet this cannot affect the validity of the con-
veyance." Here the assignment is for the benefit of all the
creditors, with a preferred order of payment. There is noth-
ing in the case that in the least impeaches the *bona fides* of
the transaction. 3 *H. & J.*, 499, *Bruce vs. Smith*. 6 *G. &*
*J.*, 206, *State vs. Bank of Maryland*.

It is further objected to the deed for the land, that the de-
scription it contains is too indefinite and uncertain, and that
no extrinsic facts can be resorted to, for the purpose of show-
ing its application to the land attached. To make this objec-
tion availing to the appellant, under the exception to the *mere
admissibility of the deed in evidence*, the court must see
that it presents a case of incurable patent ambiguity, such,
as with the aid of extrinsic facts, could not be made in-
telligible with any degree of certainty, for it is not every case
of patent ambiguity that is beyond the aid of extrinsic circum-
stances. The instrument must be very defective upon its
face, to justify the court in adjudging it void, as incapable of
being made intelligible and certain by extrinsic facts. This
the court below was required to determine of this deed, upon
the objection to its admissibility. It is proper therefore for us
to see, in what cases instruments may be sustained by a re-
sort to extrinsic aid.

In *Colpoys vs. Colpoys*, 1 *Jacob*, 451, it was said by Sir
Thomas Plumer, Master of the Rolls, that "when the person
or thing is designated on the face of the instrument, by terms
imperfect and equivocal, admitting, either of no meaning at
all by themselves, or of a variety of different meanings, referring
tacitly or expressly to extrinsic circumstances, it has never
been considered an objection to the reception of evidence of
those circumstances, that the ambiguity was patent, manifested

Berry *vs.* Matthews & Chapman.

on the face of the instrument. When a legacy is given to a man by his surname, and the christian name is not mentioned, is not that a patent ambiguity? Yet it is decided that is admissible. *Price vs. Price*, 4 *Ves.*, 680." The classification of ambiguities, as stated by Lord Bacon, has not been adhered to, and his rules for the reception and rejection of evidence have been greatly modified, as will be seen by the authorities. 2 *Brod. & Bing.*, 553, *Smith vs. Jersey.* 1 *Pet.*, 652, *Barry vs. Coombe.* 13 *Pet.*, 98, *Bradley vs. Steam Packet Co.* 1 *Mason*, 11, *Peisch vs. Dickson.* *Note* 263 *in* 2 *Cowen & Hill, upon Philips.*

But the description in this deed is perfect enough in itself. There is no patent ambiguity. The only difficulty that could arise, would be in comparing the description in the deed with external objects, and giving it an application. It is in doing this, that it may be found that things have been in some immaterial respects misdescribed, or that inaccurate language or terms have been used; but in neither case is the deed made void. If it be a partial misdescription only, the instrument will be effective, provided there is sufficient indication of intention appearing on the face of the paper to justify the application of evidence. So much of the description as is false, is rejected upon the principle, "*falsa demonstratio non nocet cum de corpore constat.*" 8 *Bing.*, 244, *Miller vs. Travers.* 4 *Mass.*, 196, *Worthington vs. Hylyer.* 7 *G. & J.*, 251, *Creswell vs. Lawson.* "Language may be inaccurate without being *ambiguous*, and it may be ambiguous though perfectly accurate. If, for instance, a testator having one *leasehold house* in a given place, and no *other house*, were to devise his *freehold* house there to A. B., the description though inaccurate would occasion no ambiguity." "The language may be inaccurate, but if the court can determine the meaning of this inaccurate language, without any other guide than a knowledge of the single facts upon which—from the very nature of language in general—its meaning depends, the language, though inaccurate, cannot be ambiguous." And "the circumstance, that the inaccuracy is *apparent upon the face of the instrument*, cannot, in principle, alter the case. *Wigram on Extrinsic Evidence*, 175, 176. 1 *Greenlf. on Ev.*, sec. 299.

The land conveyed by the deed in question, is described as "all that farm or tract of land lying and being in Washington county, in the State of Maryland, near Hagerstown, late the estate of —— Dall, containing one hundred and seventy-one acres of land more or less." This description alone, taken in connection with the extrinsic facts, that the grantors owned but the one farm in Washington county, and that it had been a part of John R. Dall's estate, near Hagerstown, containing nearly the exact number of acres as specified in the deed, and that they never, at any time, owned any other land in Washington county, puts it beyond doubt as to what land was intended. It could, in fact, have intended no other land than that attached, because the grantors owned none other in that county. 4 *Mass.*, 204. *Shep. Touch.*, 247 to 250. The remaining part of the description, referring to the source from whence the land was acquired, though the language may not be in all respects precisely accurate, is yet substantially correct as shown by the extrinsic facts offered in connection with the deed. If there was no other description in the deed than this reference alone, it would point to the identity of the land with sufficient certainty; for *id certum est quod certum reddi potest.* 3 *Mylne & Keene*, 353, *Owen vs. Thomas.* 2 *Phillip's Ev.*, 297.

But we are entitled to read the whole description, by the light of the surrounding facts and circumstances by which it is made perfectly plain. "The law does not deny to the reader the same light and information that the writer enjoyed; he may acquaint himself with the persons and circumstances, that are the subjects of the allusions and statements in the written agreement, and is entitled to place himself in the same situation as the party who made the contract, to view the circumstances as he viewed them, and so judge of the meaning of the words, and of the correct application of the language to the things described." 9 *Clark & Finnelly*, 555, 569, *Shore vs. Wilson.* 5 *Mees. & Wels.*, 368, *Doe vs. Hiscocks.* *Addison on Cont.*, 147. And hence the purpose and necessity of introducing the extrinsic evidence, offered in connection with the deed. It is perfectly manifest that this deed

contains no patent ambiguity, beyond the aid of extrinsic circumstances such as renders it absolutely void, nor indeed any ambiguity at all; and if not, the court certainly had no power to withhold from the jury the deed and accompanying facts. It became the province of the jury, under the facts of the case, to determine the identity of the land, and to give the description in the deed its proper application. It was for them to say, whether the land attached was the same conveyed by the deed. 19 *How.*, 263, 270, *Richardson vs. City of Boston.* And indeed in all cases of ambiguity, and where the meaning is to be judged of by facts *aliunde,* in connection with the written language, the matter must be left to the jury. 11 *Wheat.*, 59, *Etting vs. The Bank of United States.* 8 *Conn.*, 127, *Jennings vs. Sherwood.* 1 *Penn.*, 386, *Sidwell vs. Evans.* 7 *Sergt. & Rawle.*, 372, *Denison vs. Wertz.* 12 *Sergt. & Rawle.*, 131, *Watson vs. Blaine.* 16 *Pick.*, 412, *Goddard vs. Pratt.* 9 *Gill,* 205, *Taney vs. Bachtell.* 9 *How.*, 479, *Atkinson vs. Cummins.*

It is further objected, that the general assignment recorded in the District of Columbia, was inadmissible as evidence for any purpose whatever. It was offered generally, and if admissible for any purpose, it would have been error in the court below to have rejected it. 8 *Gill,* 370, *Winter vs. Donovan.* 7 *Md. Rep.*, 582, *Pegg vs. Warford.* This deed embraces all the rights, credits and *choses in action,* of the assignors, and as credits were attached, which were claimed by the appellees under the assignment, it was admissible to establish the claim. 7 *G. & J.*, 480, *Houston vs. Nowland.* 3 *H. & J.*, 499, *Bruce vs. Smith.* 12 *Md. Rep.*, 54, *Wilson & Co. vs. Carson & Co.*

LE GRAND, C. J., delivered the opinion of this court.

This is the case of an attachment levied on land, credits and corn. The garnishees admitted, in one case, the indebtedness, and in another, the possession, of a certain quantity of corn, the property of the defendants. There is no question, whatever, as to the correctness of the claim of the plaintiff, the present appellant. By an agreement filed in the cause it appears,

that separate cases were docketed against the several garnishees, which have been *stetted* to abide the decision in this one. Independently of this agreement, the cases would necessarily be separate, and distinct judgments pronounced in each. The rule, in this regard, is stated with correctness by Mr. Evans, at pages 98, 99 of his work on Practice. He says: where "the attachment has been laid in the hands of several garnishees, severally, that is, unconnectedly, or of some jointly and of other separately from them, and either jointly or severally, among themselves, the proceedings are somewhat different. Each several garnishee, and each set of joint garnishees, must then appear severally, even although they may all employ the same attorney. The clerk then dockets as many suits as there are separate appearances, and each of these is regarded as a separate cause, and goes on without any reference to the other, than is necessary to secure the defendant against the risk of the plaintiff's getting more than one satisfaction for his debt." This being so, the present appeal is confined to the validity of the attachment levied on the *land*, and this depends entirely upon the solution of the question, whether the deed of the 5th of October 1857, offered in evidence, and the other testimony objected to, but admitted by the court, be sufficient to show title in the claimants so as to defeat the plaintiff's right to condemnation. It has not been pretended that the deed, in terms, covered the particular land levied upon, but, it was insisted, that the description in the deed was of a character to create such an ambiguity as would authorize the introduction of other evidence to explain its true application. We are clearly of opinion, that the deed does not present any ambiguity, either patent or latent. It gives the devolution of the title and describes the property with clearness, and neither the one nor the other corresponds with the land levied upon, which is conceded to have been that of the defendants. The evidence adduced to show the identity of the land conveyed, with that levied upon, in no sufficient way connects itself with the description in the deed, to overrule and set it aside. Although, it was said, that if the deed of the 5th of October 1857, did not cover the land in question, and for that reason was inadmissible, yet

Berry vs. Matthews & Chapman.

that if *any part* of the evidence was admissible, it would have been error in the court to have rejected the whole, and that as the assignment of the personalty of the assignors was admissible to change the title to it, the court did right in overruling the objection.    It is undoubtedly true, that if testimony be offered *generally*, and it be objected to in *entirety*, and any part of it be admissible, it is error to reject the whole.    The cases of *Budd vs. Brooke*, 3 *Gill*, 220, *Pegg, et al., vs. Warford*, 7 *Md. Rep.*, 582, and *Carroll's Lessee vs. The Granite Manufacturing Co.*, 11 *Md. Rep.*, 403, are sufficient authority for this doctrine.    But the question here is, was any part of the evidence admissible?    Clearly not.    The only question involved in this case (the claim of the plaintiff being admitted) was the title to the land, and if the deed, offered in evidence, did not embrace it, the assignment of the personalty could not make that relative and competent which was irrelevant and incompetent evidence, because the assignment of the personalty was also irrelevant and incompetent to establish any thing in issue.    But, were it possible to try all the cases under the issues joined in this one, there would still be some doubt as to the admissibility of the evidence, and this doubt grows out of the true meaning of the admission in reference to the deed of assignment from F. & Alexander H. Dodge to Matthews and Chapman, dated the 5th day of October 1857. Inasmuch as this case must be sent back to have a judgment of condemnation entered against the land, and inasmuch as this court cannot enter judgments in the other cases, it is unnecessary we should employ any effort in the interpretation of the admission, and, therefore, content ourselves with merely stating a few principles which must govern the matter in the circuit court.

If, by the admission of the "due execution" of the deed last referred to, it was designed to give to the office copy the same effect as if the original had been produced and proved, then the admission should be so amended as to express that intention.    Without that there is no sufficient evidence of the existence of the assignment, because the only evidence of any such instrument having been executed, is an *office copy* of it,

which. is no evidence whatever, first, because if there was a sufficient delivery, then there was no need to record the assignment, and, therefore, an *office copy* is not evidence. See *Norris, Brown & Brune's Digest, title Evidence, page* 440, *letter C, pl.* 11, 12, 13; and second, because the instrument was not acknowledged as required by the Act of 1856, ch. 154. Supposing the symbolical delivery to be sufficient in law, yet the claimants should have proved the execution of the assignment by testimony other than an office copy.

The objection to this deed of assignment, chiefly relied upon by the appellees, in this court, was, that it is fraudulent and void on its face, under the statute of 13*th Elizabeth.* That seems, from the record, to have been the only objection taken below. This court has fully considered that question, and a majority of it are of opinion that such objection cannot be sustained.

From what we have said, it follows, that the court erred in permitting the testimony to go to the jury, and that, in this case, the plaintiff was entitled to a judgment of condemnation of the land. It may be further remarked, that whatever doubt there might be, as to where the title in the corn would be, if not severed from the realty, in the suit in which it has been attached, no such question can arise, inasmuch as the garnishee, in his answer to the interrogatories, admits that he holds it as the property of the defendants.

*Judgment reversed and procedendo awarded.*

(Decided June 3rd, 1859.)